## HOLLENBECK, TREASURER OF CHAFFEE COUNTY, v. SYKES, TREASURER OF PARK COUNTY.

GEOGRAPHICAL LINES—MONUMENTS AND COURSES.—In tracing geographical lines, the general rule is, that "Monuments control courses, and a specific course will control a general course;" but where a monument is uncertain, a general course may be taken into consideration in connection with other facts and circumstances for the purpose of ascertaining and identifying such monument.

*Error to District Court of Summit County.*

ACTION concerning the boundary line between Chaffee and Park counties.

This cause was commenced by the Eddy & Bissell live stock company, plaintiff, against the treasurer of Chaffee county and the treasurer of Park county, as defendants. In its complaint the plaintiff alleged that it was the owner of the following described real estate, to wit: "The southwest quarter of the south-east quarter, and the south half of the south-west quarter of section twelve (12) and the southeast quarter of the south-east quarter of section eleven (11) in township fifteen (15) south of that base line of the

United States survey next south of the northern boundary of the state of Colorado, and extending upon and along the fortieth degree north parallel of latitude, and in range seventy-five (75) west of the sixth principal meridian of said survey."

It was further alleged, among other things, that the revenue officers of said Chaffee and Park counties respectively claimed the right to tax plaintiff's said property; that plaintiff could not determine such conflicting claims; but was willing to pay its taxes to the county legally entitled to receive the same. Wherefore, it prayed that said county treasurers be required to interplead with one another touching their rights in the premises, to the end that it might be determined in which county plaintiff's said property is situate.

The defendants appeared and filed their pleadings claiming in behalf of their respective counties the premises described in the complaint. The venue of the cause having been changed to the district court of Summit county, the issue between said defendants was tried by the court without a jury resulting in a determination in favor of Park county. Treasurer Hollenbeck, as the representative of Chaffee county, brings the record to this court by writ of error.

Mr. C. S. LIBBY, for plaintiff in error.

Messrs. BAILEY & WILKIN, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The assignments of error, though few in number, are very broad, and, hence, the more difficult to determine; they are to the effect, that the finding of the district court is against the evidence, that the decree of the court is contrary to law, and attempts to establish a boundary line between the counties of Chaffee and Park different from that established by the legislative acts of the territory and state of Colorado.

The evidence thus challenged is very voluminous; though counsel agree that much of it is "utterly immaterial to the

issue." The record as transmitted to this court is accompanied by a large number of maps, surveys, profiles and photographs intended to represent the topography of the country in the region of the disputed boundary. The printed briefs and arguments of counsel do not aid much in separating the material from the immaterial testimony, or in explaining the several conflicting exhibits. Not having had the assistance of oral arguments as we requested, the review of the case has been proceeded with under many disadvantages.

The principal controversy arises out of the peculiar phraseology of the act of the territorial legislature defining county boundaries, approved Nov. 1, 1891, Session Laws, p. 52. Section 30 of that act proceeds to give the boundaries of Park county as follows: " (1) Commencing at a point where the second correction line south intersects the Platte river; (2) thence south to the third correction line south; (3) thence west to the summit of the snowy range, east of the Arkansas river; (4) thence in a northerly direction along the divide between the Arkansas and Platte rivers," etc.

There is no controversy about the point of beginning nor about the location of the third correction line south. The difficulties are encountered in the third and fourth calls as above given. At what point does the third correction line south extending westward from the southeast corner of Park county intersect " the summit of the Snowy range east of the Arkansas river?" And, from such point of intersection, what is meant by " a northerly direction along the divide between the Arkansas and Platte rivers?"

From a casual observation of the map of Colorado, calls 3 and 4 of section 30 would indicate that the southern part of Park county was in the valley of the Platte river; and that by going directly west from the southeast corner of said county, the valley of Arkansas would not be reached until " the summit of the Snowy range east of the Arkansas river " should be passed. The last two calls of section 32 of said act indicate the same thing. This may have been the understanding of the territorial legislature when they passed said

act thirty years ago. The country was then comparatively uninhabited by white settlers; no special survey had been made; nor had accurate maps been published. But it is now well known that the entire southern border of Park county lying immediately north of said third correction line is in the valley of the Arkansas river, and that the Mosquito Spur of the continental divide—that is, "the Snowy range east of the Arkansas river" ceases—as a "snowy range," several miles to the north of said third correction line.

It appears that south from Buffalo Peaks the Mosquito spur is not properly a snowy range, or a range covered by perpetual snow; thence in its southward course it is somewhat broken up or flattened out and diverges into subordinate ranges forming divides between the tributaries to the Arkansas river. Strictly speaking, the third correction line south in its westward extension from the southeast corner of Park county, does not intersect any "divide between the Arkansas and Platte rivers;" nor does it reach the summit of any snowy range east of the Arkansas river; but it does cross "divides" between certain tributaries of the Arkansas river; and the summit of some one of these divides was undoubtedly intended by the third call, "the summit of the Snowy range, east of the Arkansas river."

In behalf of Chaffee county, it is claimed that the summit of the range running in a southeasterly direction from the head-waters of Trout creek towards Black mountain, is the object thus indicated and intended by said third call. This range leaves Agate creek, a tributary of the Platte, to the north, and forms a divide between Badger creek on the southwest and Current creek on the southeast, both tributaries of the Arkansas.

In behalf of Park county, it is claimed that the object indicated and intended by said third call, is the summit of a range, now called the Park range; that the Park range is a continuation of the Snowy range, east of the Arkansas river, that it runs nearly due south from its connection with the Snowy range, that it forms a divide between Trout creek,

a tributary of the Arkansas, and Agate creek, a tributary of the Platte, and farther on crosses the third correction line south, and constitutes a divide between Trout creek and Badger creek, both tributaries of the Arkansas. The extracts from Hayden's U. S. Geological and Geographical Survey of Colorado, read in evidence by consent, describe the " Park range " of mountains in a way tending to confirm in substance the claim thus made in behalf of Park county.

It is evident that the summit of the range thus claimed by Park county better satisfies the fourth call of section 30, since its direction is more northerly from the point of intersection with the third correction line south. If the summit of the range claimed by Chaffee county be taken, the direction is more westerly than northerly until the point of divergence between these rival ranges is reached near the head-waters of Trout creek. If it were certain what specific range or summit was intended or referred to by the third call, the general phrase " northerly direction " would not be controlling; for, as was said in *Grand County v. Larimer County*, 9 Colo. 280, " Monuments control courses, and a specific course will control a general course." But, as we have seen in this case, the specific range intended by the third call of section 30 is uncertain; the summit of such range which is the monument in this case, is, therefore, uncertain; and for the purpose of ascertaining or identifying such monument, the general course or direction of the range, as indicated by the statute, may be taken into consideration in connection with other facts and circumstances. These views are not inconsistent with the following cases cited by counsel. *Shultz v. Young*, 3 Ired. 385; *White v. Gay*, 9 N. H. 126.

There is some conflict in the testimony of the witnesses; but the trial court which could best determine the preponderance of the evidence, decided the issue in favor of Park county. Its decision was to the effect, that the Mosquito spur of the Snowy range — the Park range — is a distinct and continuous range or chain of mountains next and im-

mediately east of the Arkansas river, extending from the Snowy range at and between the sources of the Arkansas and Platte rivers southward beyond said third correction line ; that the summit of this range is the natural boundary between Chaffee and Park counties, and that lands of the plaintiff described in its complaint are located in Park county. No sufficient reason appears for disturbing the finding of the trial court; its judgment is accordingly affirmed.

*Affirmed.*